UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SANDRA KINSELLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02252-JMS-MPB |
| | ) | |
| INDIANA UNIVERSITY HEALTH CARE | ) | |
| ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S SECOND MOTION TO REOPEN CASE**

## I. Introduction

Plaintiff, Sandra Kinsella, has filed a motion to reopen this case pursuant to the parties' Settlement Agreement. (Docket No. 87). On May 22, 2019, the Honorable Jane Magnus-Stinson referred this matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct any necessary hearings and issue a report and recommendation regarding the proper disposition of the second motion to reopen the case. (Docket No. 88). Plaintiff's request is opposed and fully briefed. (Docket No. 90; Docket No. 91[1]). The undersigned having reviewed the parties' filings and, being duly advised, hereby recommends that Plaintiff's *Second Motion to Reopen the Case* (Docket No. 87) be **granted**.

---

[1] On June 20, 2019, IUHP filed a *Request for Summary Ruling without Consideration of Plaintiff's Reply in Support of Her Amended Motion to Reopen Case or, in the Alternative, to File a Surreply* (Docket No. 92). The undersigned did not consider Dr. Kinsella's belated reply brief or any exhibits thereto in reaching the conclusions herein. Therefore, a separate entry denying IUHP's request as moot will be entered contemporaneous to this report and recommendation.

## II.    Background

On August 9, 2016, Dr. Kinsella filed a lawsuit against Defendant, Indiana University

Health Care Associates, Inc. (d/b/a Indiana University Health Physicians) ("IUHP"), in state

court, which was removed to this court on August 24, 2016. (Docket No. 1). On December 22,

2016, Dr. Kinsella filed her Second Amended Complaint, alleging gender discrimination,

retaliation, and wrongful termination. (Docket No. 26). On November 10, 2017, Dr. Kinsella

filed her Statement of Claims, identifying only sex harassment and discrimination as her

remaining claims against IUHP, and omitting any reference to her retaliation or wrongful

termination claims. (Docket No. 64).

Shortly thereafter, on November 30, 2017, the parties entered into a Settlement

Agreement. (Docket No. 87). In pertinent part, the Settlement Agreement[2] provided:

> Dr. Kinsella may ask the Court to re-open the Action to allow the
> Action to proceed if Drs. Allison, Hardacher, Johnson, Kritzmire or
> Latham do not receive a contract renewal during the relevant
> period,[3] or Dr. Kinsella receives evidence of what she believes to be
> unlawful gender discrimination against female IUHP
> anesthesiologists by Dr. Presson or the IUHP Anesthesiology
> Division leaders.

(Docket No. 87 at ECF p. 1).

The Agreement also provided:

> Any such request by Dr. Kinsella to reopen the Action shall not
> reference any lack of contract renewal to one of the relevant
> physicians, but shall merely reference "the parties' agreement

---

[2] The parties do not submit the Settlement Agreement to the court due to the confidential nature
of the document. During the parties' May 20, 2019, telephonic status conference (Docket No. 89)
the parties agreed that the cited language in Plaintiff's amended motion could be part of the
public record. Defendant also does not contest the cited language is an accurate quotation;
therefore, the undersigned accepts Plaintiff's cited language to be a direct quotation from the
Agreement.

[3] Neither party provides a definition for "relevant period" as it applies to this provision.

following the Court's settlement conference on November 29, 2017" as the basis for the request to re-open the Action.

(Docket No. 87 at ECF p. 1).

On December 1, 2017, the court acknowledged that a resolution had been reached and granted the parties leave to file a motion for administrative closure. (Docket No. 66). The parties filed a joint request to administratively close the matter (Docket No. 67), which was granted. (Docket No. 68).

Dr. Kinsella seeks to employ the above-listed provisions of the Settlement Agreement to reopen this matter.[4] IUHP objects and argues that Dr. Kinsella has not satisfied the Agreement's requirements to reopen.

### III.    Conclusions of Law

#### A.  Standard

First, this court has retained jurisdiction over this matter to consider the Agreement as this suit has not been dismissed with prejudice. *See Lynch, Inc. v. Samatamason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). State law governs the issue of whether to enforce a settlement agreement in a federal suit. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law[.]") (internal citation omitted).

The interpretation and construction of a contract is a function for the courts. *Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind. Ct. App. 2000). In interpreting a contract, the court is

---

[4] Plaintiff initially filed a two-line 'Notice' to administratively reopen (Docket No. 69). After a status conference, the court denied that motion without prejudice and with leave to refile the request. (Docket No. 75). Next, Plaintiff filed a Redacted Motion to Reopen (Docket No. 79), which was not in compliance with S.D. Ind. Local Rule 5-11. Thus, upon the filing of the instant motion the redacted motion was denied as moot. (Docket No. 89).

compelled to view a particular section as a whole rather than examine each phrase therein in isolation. *Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1142 (Ind. Ct. App. 2003). "Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning." *Niccum*, 734 N.E.2d at 639. The terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. *Id.* "Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions." *Id.* These standards apply to settlement agreements. *Angel Shores Mobile Home Park, Inc. v. Cray*, 78 N.E.3d 718, 722 (Ind. Ct. App. 2017).

## B. Analysis

IUHP objects[5] to the reopening of this case on the basis that the Agreement requires Dr. Kinsella to "present 'evidence of what she believes to be unlawful gender discrimination against female IUHP anesthesiologists by Dr. Presson or the IUHP Anesthesiology Division leaders[.]'" (Docket No. 90 at ECF p. 1). IUHP argues Dr. Kinsella has failed to do this and, instead, appears to be attempting to argue the claims of other parties about conduct by parties who did not work with her, occurring long after she left IUHP. (*Id.*). Moreover, IUHP asserts that Dr. Kinsella does not allege that any of the above-mentioned physicians did not receive a contract renewal. (Docket No. 90 at ECF p. 2). IUHP focuses its entire argument on Dr. Kinsella's failure to provide sufficient evidence to this court to satisfy the Agreement's provisions. (Docket No. 90 at

_____

[5] Dr. Kinsella initially argues that IUHP objected to the reopening of this matter "because it objects to the discovery Plaintiff seeks after the case is reopened." (Docket No. 87 at ECF p. 1). However, IUHP explicitly confirms that its objections—at this juncture—are not based on the scope of discovery Dr. Kinsella intends to seek if the case is reopened. (Docket No. 90 at ECF p. 8). IUHP does make it clear that it believes Dr. Kinsella's plan of strategy upon reopening is overbroad. Given the question at this stage is whether the matter should be reopened, it is premature for the undersigned to consider the appropriate scope of discovery upon reopening.

ECF pp. 3-8). IUHP argues it is prejudiced and reopening the case would breach the parties' agreement without the required "evidence." (Docket No. 90 at ECF p. 1).

IUHP's desired reading of the contract is not in accord with the relevant provisions' plain and ordinary meanings. Pursuant to the Settlement Agreement: "Dr. Kinsella may ask the Court to re-open the Action to allow the Action to proceed" if one of two scenarios present itself. (Docket No. 87 at ECF p. 1). The first is if "Drs. Allison, Hardacher, Johnson, Kritzmire or Latham do not receive a contract renewal during the relevant period." (*Id.*). The second is if "Dr. Kinsella *receives* evidence of what *she believes* to be unlawful gender discrimination against female IUHP anesthesiologists by Dr. Presson or the IUHP Anesthesiology Division leaders." (*Id.*) (emphases added). The Agreement goes on to provide that "[a]ny such request by Dr. Kinsella to reopen the Action shall not reference any lack of contract renewal to one of the relevant physicians, *but shall merely reference* 'the parties' agreement following the Court's settlement conference on November 29, 2017' as the basis for the request to re-open the Action." (Docket No. 87 at ECF p. 1) (emphasis added).

Reading these provisions together, the undersign finds that the Agreement's language is not so stringent as to require Dr. Kinsella to *prove* with admissible evidence the existence of either of the two conditions in order to reopen this matter. Rather, Dr. Kinsella must have a basis to believe that one of the two conditions exists. With regard to the first provision—that Dr. Kinsella may ask the court to reopen the action if any of the named doctors do not receive a contract renewal during the relevant period—the Agreement even goes so far as to provide that Dr. Kinsella's motion can not name any of the physicians with specificity and should "merely reference" the Agreement as a basis for reopening. Considering these two provisions together

supports the conclusion that Dr. Kinsella need not submit evidence proving the condition satisfied in order to reopen this matter.

With regards to the second provision—the if Dr. Kinsella receives evidence of what she believes to be unlawful gender discrimination against female IUHP anesthesiologists by Dr. Presson or the IUHP Anesthesiology Division leaders—the Agreement is clear the Dr. Kinsella need only receive evidence, which she believes meets the condition. Again, the plain and ordinary reading of that provision does not require a stringent level of fact-finding by the court at this juncture.

IUHP relies on the following definition of "evidence" for its argument: "Evidence" has been defined as "any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, exhibits, concrete objects, etc., for the purpose of inducing believe in the minds of the court or jury as to their contention." (Docket No. 90 at ECF p. 3). IUHP argues that speculation is not evidence and thus, Dr. Kinsella's motion must fail. (*Id.*). IUHP's argument is unsatisfactory for two reasons: (1) because it ignored the operative words of the Agreement: namely that Dr. Kinsella need only "receive" the evidence (as to the second condition) and (2) because IUHP's desired definition for evidence is only one of several definitions.

While IUHP asserts that the aforementioned definition is the Black's Law Dictionary definition—that is not accurate. Black's Law Dictionary presents four definitions for evidence— none of which being the one relied on by IUHP. The first definition set forth for evidence is: "[S]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact."

Evidence should not be so narrowed as to be only synonymous with the more exacting term, admissible evidence. *See* ADMISSIBLE EVIDENCE, Black's Law Dictionary (11th ed. 2019) ("Evidence that is relevant and is of such character (e.g., not unfairly prejudicial, based on hearsay, or privileged) that the court should receive it."). The plain and ordinary construction of the Agreement provisions in question leans toward accepting the more general definition of evidence, i.e., something that tends to prove or disprove the existence of a fact. The Agreement does not contain any language establishing, or even suggesting, that Dr. Kinsella must prove the existence of a fact in order to prevail in reopening this matter. Moreover, there is nothing unclear or ambiguous about the contract that requires the undersigned to construe the Agreement or to look at extrinsic evidence to determine its meaning.

Having found that the clear and unambiguous meaning of the contract does not require Dr. Kinsella to provide admissible evidence, the undersigned will consider whether Dr. Kinsella has met either of the two conditions precedent to reopening. Again, the Agreement first provided that "Dr. Kinsella may ask the Court to re-open the Action to allow the Action to proceed if Drs. Allison, Hardacher, Johnson, Kritzmire, or Latham do not receive a contract renewal during the relevant period." (Docket No. 87 at ECF p. 1). It also provided that "[a]ny such request by Dr. Kinsella to reopen the Action shall not reference any lack of contract renewal to one of the relevant physicians, but shall merely reference 'the parties' agreement following the Court's settlement conference on November 29, 2017' as the basis for the request to re-open the Action." (*Id.*).

Dr. Kinsella's motion cited the Agreement's exact language. (*Id.*). In her attached Verified Statement, she avers that the above-named female doctors were deposed during her lawsuit. (Docket No. 87-1 at ECF p. 1). She then avers "[n]one of these doctors have received

new contracts from IUHP." (*Id.* at ECF p. 1, ¶ 5). IUHP argues that Dr. Kinsella's motion "recites no foundation for her assertion that none of the five physicians received new contracts from IUHP." ([Docket No. 90 at ECF p. 4](#)). However, this argument directly contradicts the plain language of the parties' own Agreement, which provides that Dr. Kinsella *should only reference* the Agreement and should not name the physicians by name. Not only was Dr. Kinsella not required to provide a foundation, but it is difficult to see how she could provide a foundation for the basis of her assertion and follow the provisions of the parties' Agreement. Thus, the undersigned finds that Dr. Kinsella has satisfied the first condition and should be permitted to reopen this matter.

Although the Agreement only requires either condition to be met in order to reopen this matter, the undersigned also finds that the second condition has been met. The Agreement provided that "Dr. Kinsella may ask the Court to re-open the Action to allow the Action to proceed if . . . Dr. Kinsella receives evidence of what she believes to be unlawful gender discrimination against female IUHP anesthesiologists by Dr. Presson or the IUHP Anesthesiology Division leaders." ([Docket No. 87 at ECF p. 1](#)). IUHP is correct that evidence (or receipt of evidence) of retaliation, under the terms of the Agreement, do not allow for reopening. As noted by the Seventh Circuit, "retaliation" and "discrimination" claims are not normally considered "like or reasonably related" to one another for purposes of determining whether a claim is outside the scope of a plaintiff's agency charge of discrimination. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019). Therefore, the receipt of retaliation evidence noted by Dr. Kinsella in her motion does not warrant reopening of this matter. IUHP is also correct that Lisa Ann Nigro's Verified Statement does not establish a basis for reopening the matter because, as a Certified Registered Nurse Anesthetist (CRNA), she does not satisfy the

Agreement's requirement that the discrimination must be of IUHP anesthesiologists. (Docket No. 87-3 at ECF p. 1).

However, Dr. Kinsella's verified statement does provide that each of the female anesthesiologists that were deposed in her lawsuit have reported to Dr. Kinsella that since the depositions, "they have [been] discriminated against because they are women." (Docket No. 87-1 at ECF p. 1, ¶ 7). Dr. Kritzmire, a female anesthesiologist, further avers that she has "been the subject of ongoing gender discrimination . . . during the course of [her] employment." (Docket No. 87-2 at ECF p. 2, ¶ 8). Dr. Johnson, a female anesthesiologist, at IUHP, who reports to Dr. Senthis Sadhasivam, who in turn reports to Dr. Robert Presson, averred that since giving her deposition in this case the gender discrimination at IUHP has gotten worse. (Docket No. 87-4 at ECF p. 1, ¶ 6). As to her treatment specifically, Dr. Johnson avers that Dr. Sadhasivam's actions, which included a May 24, 2018, incident has led to constructive discharge due to discriminatory and retaliatory behavior. (*Id.* at ECF pp. 1-2, ¶¶ 7-17). Dr. Johnson further avers that in 2018 a new pay structure was announced that directly discriminates against female doctors in IUHP Anesthesia, Riley Division. (*Id.* at ECF p. 2, ¶¶ 20-25). The Agreement only requires Dr. Kinsella to have a subjective belief that gender discrimination of an IUHP anesthesiologist occurred post settlement; thus, the averments set forth by Drs. Kinsella, Kritzmire, and Johnson are sufficient. Dr. Kinsella averred as to her general belief. Dr. Kritzmire indicated that her gender discrimination had been ongoing, and Dr. Johnson specifically averred that the gender discrimination worsened after the depositions and provided statements that it worsened further in 2018—well after the Settlement Agreement at issue had been executed.

IUHP argues that contrary to Dr. Kritzmire's affidavit, she did not provide a "complaint" or Charge of Discrimination, but an EEOC Inquiry, which gives her a deadline for filing the

charge. ([Docket No. 90 at ECF p. 6](#)). However, this, even if true, is irrelevant to the court's consideration at this juncture. IUHP argues that Dr. Johnson's statement provides specific allegations about conduct against female IUHP anesthesiologists, but only conduct by Dr. Sadhasivam, who began working for IUHP after Dr. Kinsella left IUHP, and who was the Division Director only at Riley Hospital (where Dr. Kinsella did not work). ([Docket No. 90 at ECF p. 7](#)). Thus, IUHP concludes that Dr. Kinsella "lacks personal knowledge to honestly hold a 'belief' of whether [Dr. Sadhasivam] engaged in unlawful gender discrimination, apart from relying upon hearsay from Dr. Johnson." (*Id.*). However, IUHP makes no argument that Dr. Sadhasivam does not fall within the Agreement's definition of a "IUHP Anesthesiology Division leader" nor is there any support that just because Dr. Kinsella did not work with Dr. Sadhasivam she could not receive evidence that would reasonably allow her to conclude that a female IUHP anesthesiologist experienced gender discrimination. If IUHP wanted to further narrow the pool of potential leaders it had the freedom to negotiate to include more narrow terms in the Agreement. The undersigned finds no basis to limit the Agreement's terms to only leaders with whom Dr. Kinsella personally worked.

### IV.    Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's *Second Motion to Reopen the Case* (Docket No. 87) be **granted**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO ORDERED.**

**Dated:** July 1, 2019

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Service made electronically to all ECF-registered counsel of record.